# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELHORN SALES, SERVICE | : | CIVIL ACTION |
| & TRUCKING Co., Inc., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| RIESKAMP EQUIPMENT Co. | : | |
| Defendant. | : | № 08-2424 |

## M E M O R A N D U M

PRATTER, J.                                                                                                                                                MARCH 18, 2010

This is a case about the "tenacity" of chicken manure.[1] The Plaintiff, Melhorn Sales, Service & Trucking Co., Inc. ("Melhorn"), is a company located in Mount Joy, Pennsylvania that is in the business of hauling agricultural products, including chickens. Rieskamp Equipment Co. ("Rieskamp") is a corporate citizen of Indiana, and is in the business of designing and installing truck-washing systems. In 2006 and 2007, Rieskamp created such a system for Melhorn, which wanted a facility to clean its trucks – and particularly those used for transporting chickens.

In May of 2008, Melhorn filed a nine-count complaint against Rieskamp, claiming that Rieskamp had "failed to produce a product suitable for the Plaintiff's particular purpose" – *viz.,* the removal of chicken manure from truck beds – and had thus breached an alleged contract with Melhorn, as well as express and implied warranties (Complaint ¶¶ 11-14). The Complaint also alleged that Rieskamp was strictly liable for alleged defects in the washing system; had acted negligently designing and installing the system; had committed misrepresentation and fraud in

---

[1] According to the Plaintiff, this stalwart substance is so resilient that it "makes ordinary road grime look like talcum powder by comparison." *See* Response in Opposition to Defendant's Motion for Summary Judgment, pg. 7.

conjunction with its agreement to design and install the system; and had violated Pennsylvania's Unfair Trade Practices and Consumer Protection Act ("UTPCPA"), 73 P.S. §§ 201, *et seq*. (Complaint ¶¶ 15-19). Since the Complaint was filed, the parties have stipulated to the dismissal of the UTPCPA, strict liability, and negligence claims.[2]

On October 30, 2009, Rieskamp filed a Partial Motion for Summary Judgment (Docket No. 40), which addresses two of Melhorn's six pending claims: (1) Count VII of the Complaint, which presents Melhorn's misrepresentation claim; and (2) Count VIII, which presents its fraud claim. For reasons discussed below, the Court will grant the Motion.

## JURISDICTION

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## FACTUAL AND PROCEDURAL BACKGROUND

Melhorn is a family business, owned by a married couple named John and Sandra Melhorn (John Melhorn Dep., 12:8-9). Their son, Astin Melhorn, is an employee of the company (*id.*, 12:19-21). After years of washing its own chicken-hauling trucks, Melhorn contacted Edward Rieskamp, president of the eponymous equipment firm, in the hopes of procuring an automatic truck-washing system (*id.*, 14:19-21; 26:1-5). Rieskamp designed and installed a truck-washing system for Melhorn, but when the system was complete, John Melhorn found it unsatisfactory. From its first run, Mr. Melhorn says, the Rieskamp system "used an

---

[2] The UTPCPA claim was dismissed on February 5, 2009 (Docket No. 14). Melhorn's acquiescence in the dismissal of the strict liability and negligence claims appears in its Response in Opposition to Defendant's Motion for Summary Judgment (Docket No. 42).

2

awful lot of water" but "didn't clean the truck[s]" (*id.*, 52:12-16). Any loss that Melhorn may have suffered as a result of the system's alleged flaws was purely economic; John Melhorn himself acknowledges that the Rieskamp system did no physical damage to his employees or property (*id.*, 103:3-9).

**LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails

3

to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255.

**DISCUSSION**

Rieskamp argues that there are no genuine issues of material fact that would prevent the Court from ruling on Melhorn's misrepresentation and fraud claims as a matter of law, and also that these two claims are barred by Pennsylvania law. Pennsylvania courts use two related tests to determine whether tort claims asserted in conjunction with contract claims should be allowed to proceed as freestanding causes of action, or instead rejected as illegitimate attempts to procure additional damages for a contract breach: (1) the "gist of the action" test, and (2) the "economic loss doctrine" test. *Bohler-Uddeholm America v. Ellwood Group, Inc.*, 247 F.3d 79, 103 (3d Cir. 2001). Rieskamp proposes that these tests operate to bar Melhorn's misrepresentation and fraud claims. This opinion will address each of Rieskamp's arguments in turn.

**I.** *Genuine Issues of Material Fact*

For the reasons set out below, the Court agrees that no genuine issues of material fact exist as to Melhorn's misrepresentation claim, and concludes that the nonexistence of such issues of fact is one independent ground on which Rieskamp's Partial Motion for Summary Judgment should be granted as to Count VII of the Complaint. The deficiency in Melhorn's fraud claim lies primarily in its inconsistency with legal principles discussed in Sections II and III.

## A. *Misrepresentation*

Count VII of Melhorn's Complaint alleges that "[Edward] Rieskamp misrepresented to Plaintiff that [Rieskamp Equipment] was experienced in the installation of truck washes suitable for manure removal when, in fact, his company had never attempted to design or install such a truck-washing system before" (Complaint ¶ 17). Melhorn has failed to cite facts in the record that might support such a theory of misrepresentation.

Under Pennsylvania law, a fraudulent misrepresentation claim has six elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Overall v. Univ. of Pa.*, 412 F.3d 492, 498 (3d Cir. 2005) (*quoting Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 889 (Pa. 1994)).

The record does not contain facts suggesting that these elements might be satisfied here. There is no evidence that Mr. Rieskamp represented to Melhorn that he had experience with the removal of chicken manure. In his deposition, John Melhorn admitted that Edward Rieskamp had never told him that Rieskamp had previously designed wash facilities for chicken manure, and speculated that Rieskamp may have told him the opposite – i.e., that he had never designed such a system (John Melhorn Dep., 108:15-25). Astin Melhorn also stated that Mr. Rieskamp had never represented that he had previously designed, installed, or manufactured a system designed to clean chicken manure from trucks. Indeed, the younger Mr. Melhorn thought Mr. Rieskamp's failure to make such a representation was notable, since "we figured that would have been something that would have come up when you are trying to sell a truck wash to a chicken

trucking company" (Astin Melhorn Dep., 83:17-84:2).

Meanwhile, Edward Rieskamp has said that he did, in fact, have some limited experience designing truck washes for chicken manure removal (Edward Rieskamp Dep., 31:4-32:6), which suggests that if he had made the representation alleged, he might have been telling the truth. And neither party disputes that Rieskamp had some experience designing truck washes for other types of manure removal. Although species of manure are not fungible, this fact is relevant because Count VII of Melhorn's Complaint actually makes no reference to chicken manure *per se*.

There is no evidence in the record showing that Mr. Rieskamp made the representation alleged in Count VII of the Complaint. Thus Rieskamp is entitled to judgment on Melhorn's misrepresentation claim as a matter of law.[3]

### B.    *Fraud*

Count VIII alleges that Rieskamp "knew, or should have known, that its system would be inadequate for Plaintiff's particular purpose, and failed to disclose said information to Plaintiff, who relied upon Defendant's statements to his detriment" (Complaint ¶ 18).

Although Melhorn's misrepresentation and fraud claims rely on different alleged facts, the torts themselves are, for all practical purposes, the same. Under Pennsylvania common law, their elements are "essentially identical." *Greenberg v. Tomlin*, 816 F. Supp. 1039, 1054 (E.D.

---

[3]    The Court has interpreted Melhorn's misrepresentation claim as a claim that Rieskamp engaged in fraudulent misrepresentation. However, the outcome of this Motion would be the same if Melhorn were alleging negligent misrepresentation. Melhorn has not adduced any evidence that it justifiably relied on Mr. Rieskamp's alleged statement regarding his experience, or indeed that Mr. Rieskamp ever made the alleged statement. *See Rempel v. Nationwide Life Ins. Co.*, 370 A.2d 366, 408 (Pa. 1977) (listing elements of negligent misrepresentation).

Pa. 1993) (internal citations omitted).[4] The Pennsylvania Supreme Court has used the terms "intentional misrepresentation" and "fraud" as synonyms. *See Gibbs*, 647 A.2d at 889. The United States Court of Appeals for the Third Circuit has also used the terms interchangeably. *See Mellon Bank v. First Union Real Estate,* 951 F.2d 1399, 1408 (3d Cir. 1991).

The relevant question here is whether there is evidence in the record suggesting that Rieskamp "knew, or should have known, that its system would be inadequate" for the removal of chicken manure at the time he agreed to design and install it. As Melhorn's counsel conceded at oral argument, there is certainly no evidence that Rieskamp *actually* knew that the system would be inadequate. Indeed, John Melhorn himself apparently believes that Edward Rieskamp thought the truck wash would work. When asked in his deposition whether he thought "Rieskamp should have known that the system would be inadequate," Mr. Melhorn replied:

> I don't think he knew that [the system would not work]. I think he thought if you used enough of water [sic] it will clean anything. But he was wrong.
>
> (John Melhorn Dep., 109:13-17).

But *should* Mr. Rieskamp have known that he would be unable to build an effective system for Melhorn? Answering this question requires that the Court discuss two Pennsylvania doctrines that limit the ability of plaintiffs in contract actions to file collateral tort claims.

---

[4] "To prove fraud in Pennsylvania, a plaintiff must prove six elements: (1) a misrepresentation, (2) material to the transaction, (3) made falsely, (4) with the intent of misleading another to rely on it, (5) justifiable reliance resulted, and (6) injury was proximately caused by the reliance." *Santana Products, Inc. v. Bobrick Washroom Equip, Inc.*, 401 F.3d 123, 136 (3d Cir. 2005) (*citing Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534, 540 (Pa. Super. Ct. 2003)); *cf. Overall v. Univ. of Pa.*, 412 F.3d at 498 (listing six elements of misrepresentation).

7

**II.    *The "Gist of the Action" Test***

"The 'gist of the action' doctrine bars plaintiffs from bringing a tort claim that merely replicates a claim for breach of an underlying contract.*" Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 n.8 (3d Cir. 2002) (*citing Phico Insurance Co. v. Presbyterian Medical Services Corp.,* 444 Pa. Super. 221, 663 A.2d 753, 757 (Pa. Super. Ct. 1995)).  Pennsylvania courts have invoked the doctrine in cases where a plaintiff claims that the defendant breached a contract, and appends a tort claim that is collateral to, or dependent upon, the allegations of nonperformance.  *See, e.g., First Republic Bank v. Brand*, 50 Pa. D. & C. 4th 329, 338 (C.P. Phila. 2000).[5]  The purpose of the doctrine is "to maintain the distinction between the theories of breach of contract and tort," and to "preclude[ ] a plaintiff from recasting ordinary breach of contract claims into tort claims." *Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F. Supp. 2d 329, 340 (*citing Bash v. Bell Tel. Co. of Pennsylvania*, 601 A.2d 825, 829 (Pa. Super. 1992)); *see also eToll, Inc. v. Elias / Savion Adver., Inc.*, 811 A.2d 10 (Pa. Super. Ct. 2002).

In this case, Melhorn alleges that after agreeing to design and install a truck-washing system suitable for the removal of chicken manure, Rieskamp failed to produce a system that performed this function to Melhorn's satisfaction.  In a collateral claim, Melhorn essentially alleges that Rieskamp committed fraud by failing to inform Melhorn in advance that he would be unable to perform his contractual obligations.  This is precisely the kind of tort claim that is

---

[5]    *See also Quorum Health Resources Inc. v. Carbon-Schuylkill Community Hospital*, 49 F. Supp.2d 430 (E.D. Pa. 1999) (the "gist of the action" doctrine bars claim of negligent performance of contractual duties); *Factory Mktg. Inc. v. Schuller Int'l Inc.*, 987 F. Supp. 387 (E.D. Pa. 1998) (doctrine bars claim of fraud based on a failure to honor guarantees contained in a contract); *Peoples Mortgage Co. v. Federal Nat'l Mortgage Ass'n*, 856 F. Supp. 910 (E.D. Pa. 1994) (doctrine bars conversion claim based on false billing under a contract).

barred by the "gist of the action" doctrine.

In theory, breaching parties in contract cases should often have realized before entering into the contract that their own limitations, or some set of intervening factors, would ultimately prevent them from fulfilling their obligations. *Post hoc*, many breaches appear inevitable. But this does not mean that every incompetent or over-optimistic contractor is a fraudster. Because the "gist" of this action is that Rieskamp failed to comply with the terms of an agreement with Melhorn, the law does not allow Melhorn to "pile on" by including a collateral fraud claim, the resolution of which would depend on the outcome of the underlying contract dispute.

### III.   *The "Economic Loss Doctrine" Test*

These principles are also expressed in another rule. The economic loss doctrine, which is related to the "gist of the action" doctrine, "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski*, 286 F.3d at 671 (*quoting Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)).[6] Where the purchaser of a product has sued the manufacturer, and the only loss that the purchaser alleges is an economic loss stemming from the product's failure to operate as expected, "express and implied warranties under contract law are best suited to compensate [the purchaser] for a loss in product value." *Id.* (*citing East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872-73 (1986)).

Relying on the law of contract under these circumstances prevents contract law from

---

[6] Although the Supreme Court of Pennsylvania has yet to explicitly adopt the economic loss doctrine, the Pennsylvania Superior Court, in an *en banc* decision, accepted the doctrine's application. *REM Coal v. Clark Equip. Co.*, 563 A.2d 128 (Pa. Super. Ct. 1989)

9

"drowning in a sea of tort," *id.*, and also permits parties to a contract to negotiate the terms of a manufacturer's liability, thereby reducing the likelihood of a "disproportion between the large amount of damages that might be recovered and the extent of defendant's fault." *Aikens v. Baltimore & Ohio R.R. Co.*, 501 A.2d 277, 279 (Pa. Super. 1985). Though the economic loss doctrine does not bar parties in privity from asserting tort claims against one another under any circumstances, it precludes the recovery of damages in tort which were in the contemplation of the parties at the origination of the agreement. *Factory Mkt., Inc. v. Schuller Int'l, Inc.*, 987 F. Supp. 387, 396 (E.D. Pa. 1997). Since "[a] buyer, contractor, or subcontractor's desire to enjoy the benefits of his bargain is not an interest that tort law traditionally protects," any party that brings a tort claim in conjunction with a breach-of-contract claim must make a "showing of harm above and beyond disappointed expectations evolving solely from a prior agreement." *Sun Co. v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 371 (E.D. Pa. 1996).

In this case, Melhorn claims that it was harmed because the product that it purchased from Rieskamp failed to operate as warranted. Melhorn does not allege any non-economic loss. In conjunction with its breach-of-contract and warranty claims, Melhorn argues that Rieskamp committed fraud by representing that he could build an effective washing system (in other words, that he could fulfill his contractual obligations) when he ought to have known that he could not. This is a claim "arising from 'failed economic expectations,' i.e. expectations that the product would perform in the manner warranted"[7] – and since Melhorn has made no showing of harm beyond disappointed expectations, this claim is barred by the economic loss doctrine.

---

[7] *Fid. & Deposit Co. of Md. v. Int'l Bus, Mach. Corp.*, 2005 U.S. Dist. LEXIS 25420 at *5 (M.D. Pa. Oct. 19, 2005) (*quoting Wellsboro Hotel Co. v. Prins*, 894 F. Supp. 170, 175 (M.D. Pa.1995)).

**CONCLUSION**

For the reasons discussed above, Rieskamp is awarded summary judgment on Count VII and Count VIII of Melhorn's Complaint.

BY THE COURT:


S/Gene E.K. Pratter
Gene E.K. Pratter
*United States District Judge*
